**TAB 2**

CASE NUMBER: CGC-06-4( 70  BLUE MARLIN CORPORATI( VS. USPA ACCESSORIES

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

| | | |
|---|---|---|
| **DATE:** | **NOV-17-2006** | |
| **TIME:** | **9:00AM** | |
| **PLACE:** | **Department 212** | |
| | **400 McAllister Street** | |
| | **San Francisco, CA  94102-3680** | |

All parties must appear and comply with Local Rule 3.

CRC 212 (g)(1) requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 3)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

# Alternative Dispute Resolution (ADR) Information Package

# Alternatives to Trial

# Here are some other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

ADR-I  1/06  (bc)

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can be speedier.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can permit more participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR can be flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

# Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

ADR-1  1/06  (bc)

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early  neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy.  Attorneys are encouraged to share this guide with clients.  By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for civil matters; each program is described below:

1)    Judicial arbitration
2)    Mediation
3)    The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony.  The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.  When the Court orders a case to arbitration it is called judicial arbitration.  The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration.  Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is _not_ binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

# MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

ADR-1  1/06  (bc)

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-8913

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

ADR-1  1/06  (bc)

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

# EARLY SETTLEMENT PROGRAM

## Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

## Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

*Cost*

All parties must submit a $200 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 982-1600.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution Coordinator,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1  1/06  (bc)

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA   94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE**<br>**DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation        ☐   Mediation Services of BASF      ☐   **Judicial Mediation**
☐ Binding arbitration                                                         Judge _____
☐ Non-binding judicial arbitration                                  Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

☐  *Additional signature(s) attached*

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                   FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT<br>(Check one): ☐ UNLIMITED CASE<br>(Amount demanded<br>exceeds $25,000) ☐ LIMITED CASE<br>(Amount demanded is $25,000<br>or less) | CASE NUMBER: |
|---|---|

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above)*:

---

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1   **Party or parties** *(answer one)*:
   a. ☐   This statement is submitted by party *(name)*:
   b. ☐   This statement is submitted **jointly** by parties *(names)*:

2   **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐   The complaint was filed on *(date)*:
   b. ☐   The cross-complaint, if any, was filed on *(date)*:

3   **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐   All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed
   b. ☐   The following parties named in the complaint or cross-complaint
      (1) ☐   have not been served *(specify names and explain why not)*:

      (2) ☐   have been served but have not appeared and have not been dismissed *(specify names)*.

      (3) ☐   have had a default entered against them *(specify names)*:

   c. ☐   The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4.   **Description of case**
   a.   Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California    **CASE MANAGEMENT STATEMENT**    Cal. Rules of Court,
rule 212

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 201.9 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply)*:
   (1) ☐ Mediation
   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 1612)
   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 1612)
   (4) ☐ Binding judicial arbitration
   (5) ☐ Binding private arbitration
   (6) ☐ Neutral case evaluation
   (7) ☐ Other *(specify)*:

   e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
   f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   g. ☐ This case is exempt from judicial arbitration under rule 1601(b) of the California Rules of Court *(specify exemption)*:

11. **Settlement conference**
   ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

12. **Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

13. **Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
   ☐ Bankruptcy ☐ Other *(specify)*:
   Status:

14. **Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 14a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

15. **Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

16. **Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

   | Party | Description | Date |
   |---|---|---|
   | | | |

   c. ☐ The following discovery issues are anticipated *(specify)*:

18. **Economic Litigation**
   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

19. **Other issues**
   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

20. **Meet and confer**
   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 212 of the California Rules of Court *(if not, explain)*:

   b. After meeting and conferring as required by rule 212 of the California Rules of Court, the parties agree on the following *(specify)*:

21. **Case management orders**
   Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

22. Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____     ► _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY)

_____     ► _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY)

                                        ☐ Additional signatures are attached

American LegalNet, Inc.



# Superior Court of California
## County of San Francisco

## Judicial Mediation Program

### Introducing a new court alternative dispute resolution
### program that provides judicial mediation of complex civil cases

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Paul H. Alvarado
The Honorable David L. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable John J. Conway
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Curtis E. A. Karnow

The Honorable Patrick J. Mahoney
The Honorable Tomar Mason
The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable A. James Robertson, II
The Honorable James L. Warren
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

**TAB 3**

08/23/2006 11:37 FAX 13108389216          R    ALL-STAR MESSENGE                No. 2957    P. 1
Aug 23 2006 12:24PM   Dav( Jass & Associates                    (

1  David M. Bass (State Bar No. 117199)
   Peter M. Cho (State Bar No. 213870)
2  DAVID M. BASS & ASSOCIATES
   2029 Century Park East, 14th Floor
3  Los Angeles, California 90067
   Telephone: (310) 789-1152
4  Facsimile: (310) 789-1149

5  Attorneys for Defendant USPA
   ACCESSORIES, LLC dba
6  CONCEPT ONE ACCESSORIES

ENDORSED
F I L E D
San Francisco County Superior Court

AUG 2 3 2006

GORDON PARK-LI, Clerk
BY: _____RONNIE OTERO_____
                    Deputy Clerk

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF SAN FRANCISCO

10

11  BLUE MARLIN CORP.,                    Case No. CGC-06-453170

12              Plaintiff,                Hon. Ronald E. Quidachay
                                          Law & Motion Department 302
13      vs.

14  USPA ACCESSORIES, LLC dba             DEFENDANT USPA ACCESSORIES,
    CONCEPT ONE ACCESSORIES,              LLC'S NOTICE OF MOTION AND
15                                        MOTION TO STRIKE; MEMORANDUM
              Defendant.                  OF POINTS AND AUTHORITIES
16

17                                        Date:      September 21, 2006
                                          Time:      9:30 a.m.
18                                        Place:     Department 302

19                                        Complaint Filed:    June 15, 2006

20

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:**

2 |     **PLEASE TAKE NOTICE** that on September 21, 2006 at 9:30 a.m., or as soon

3 | thereafter as this matter may be heard, in Department 302 of the San Francisco County Superior

4 | Court, located at 400 McAlister Street, San Francisco, California, Defendant USPA

5 | Accessories, LLC, dba Concept One Accessories ("USPA"), will, and hereby does, move this

6 | Court, pursuant to Sections 435 and 436 of the California Code of Civil Procedure and

7 | Section 1152 of the California Evidence Code, for an order striking portions of the Complaint

8 | and Exhibit B to the Complaint.

9 |     This Motion will be made on the ground that certain allegations and Exhibit B to the

10 | Complaint are inadmissible under Evid. Code § 1152. It is well established that pursuant to

11 | Evid. Code § 1152, communications made for purposes of settlement, or any other evidence

12 | relating to settlement discussions, are inadmissible to prove liability. However, Plaintiff's

13 | Complaint alleges and sets forth certain communications with USPA as evidence of USPA's

14 | purported breach, even though these communications were expressly made for purposes of

15 | settlement, or were clearly connected to discussions for purposes of settlement. Accordingly,

16 | USPA moves this Court for an order striking the following:

17 |     1.    Paragraph 9 in its entirety, commencing on page 3, line 20 through page 4,

18 |         line 2, of the General Allegations of the Complaint:

19 |           "On March 29, 2006, defendant's CEO, Sam Hafif, sent an email
20 |           to Erik Stuebe, CEO for plaintiff, in which Hafif stated, inter alia, that 'we would not agree to pay the minimum royalties as stated
21 |           in the contract. [sic]' and 'there is no point in tiptoeing around this issue, so I am stating directly that we will not accept that
22 |           obligation.' (See Exhibit B.) Defendant, through Hafif, also expressed the same message to CEO Stuebe in a telephone
23 |           conversation on March 21, 2006."

24 |     2.    Paragraph 12 in its entirety, commencing on page 4, lines 15 through 19, of the

25 |         General Allegations of the Complaint:

26 |           "Based on these unequivocal statements made by the defendant, through the attached email, and statements made orally to the
27 |           plaintiff's CEO, Erik Stuebe, plaintiff considers defendant to have anticipatorily breached the Agreement and has instituted
28 |           this action, whereby it alleges:"

3.    That portion of Paragraph 17, commencing on page 5, line 25 through page 6, line 4, of the Third Cause of Action of the Complaint as follows:

"On March 29, 2006, defendant, by email (a copy of which is attached as Exhibit B and made part of this pleading) gave notice that defendant would not perform the contract, whereby defendant totally repudiated the License Agreement. Defendant's repudiation has not been retracted despite plaintiff's demand that defendant perform its obligations and pay $234,139.23."

4.    That portion of Paragraph 18, on page 6, line 5, of the Third Cause of Action of the Complaint as follows:

"At the time plaintiff received defendant's repudiation"

5.    Exhibit B to the Complaint, in its entirety, cited in Paragraphs 9, 12, and 17 of the Complaint, which consists of:

An e-mail from Sam Hafif to Erik Stuebe dated March 29, 2006.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and the pleadings, files and other matters that may be presented at the hearing of this Motion.

Dated:  August 23, 2006                    DAVID M. BASS & ASSOCIATES


                                           By: _____
                                                    David M. Bass
                                              Attorneys for Defendant USPA
                                              ACCESSORIES, LLC dba CONCEPT ONE
                                              ACCESSORIES

DEFENDANT USPA ACCESSORIES, LLC'S NOTICE OF MOTION AND MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3    I.    **INTRODUCTION.**

4            It has long been the public policy of this State to promote candid discussions on the

5    resolution of disputes before and after the filing of a lawsuit. Accordingly, it is well settled in

6    California that any evidence of offers of compromise *"as well as any conduct or statements in*

7    *negotiation thereof"* may not be relied upon to prove liability. Evid. Code § 1152.

8            Plaintiff Blue Marlin Corporation ("Blue Marlin") has ignored this basic rule by

9    alleging in its Complaint that certain statements made by Defendant USPA Accessories, LLC

10   ("USPA) during settlement discussions expressed a breach of the contract at issue in this

11   action. USPA moves to strike (a) the allegations based on those settlement negotiations, and

12   (b) Exhibit B to the Complaint (which confirms a settlement offer). The Court should grant

13   USPA's Motion to Strike in its entirety because, under Evidence Code § 1152 and applicable

14   case law, the allegations of statements made in a settlement offer and the offer itself (Exhibit B)

15   are inadmissible and even fall outside the scope of permissible discovery.

16

17   II.   **FACTS MATERIAL TO THIS MOTION.**

18           In ruling on a motion to strike, the allegations of a complaint are considered in context

19   and presumed to be true. Clauson v. Superior Court, 67 Cal. App. 4th 1253, 1255 (1998). This

20   action concerns Blue Marlin's claim that USPA has breached its license agreement ("License

21   Agreement") by failing to pay minimum royalties purportedly owed thereunder. (See

22   Complaint, ¶¶ 7-12.)

23           Blue Marlin's Complaint references two sets of statements made by USPA as evidence

24   that USPA breached the License Agreement:

25           Based on the unequivocal statements made by the defendant,
             through the attached e-mail [Exhibit B], and statements made to
26           the plaintiff's CEO, Erik Stuebe, plaintiff considers defendant to
             have anticipatorily breached the [License] Agreement . . . .
27

28   (Complaint, ¶ 12.)

1    The first settlement statements were allegedly made in a telephone call on March 21,

2    2006 between Sam Hafif, USPA's CEO ("Hafif"), and Erik Stuebe, Blue Marlin's CEO

3    ("Stuebe"). Blue Marlin alleged that in March 21, 2006 telephone call Hafif "expressed the

4    same message" as in Hafif's March 29, 2006 e-mail to Stuebe (Exhibit B to the Complaint).

5    The March 29, 2006 e-mail is the source of the second set of settlement statements.

6    (Complaint, ¶ 9.) In the March 29, 2006 e-mail, USPA offers two proposals for Blue Marlin's

7    consideration as part of USPA's attempt to resolve the parties' dispute. (Complaint, Exh. B.)

8    Hafif then explains in the e-mail that his e-mail is communicated for the "purpose of trying to

9    reach a settlement only, and we're reserving all of our rights, and making no admissions." (Id.)

10    The allegations of the Complaint and Exhibit B thereto that incorporate or refer to the

11    settlement communications, which Blue Marlin alleged constituted evidence of breach in

12    Paragraph 12, were made in the course of settlement proposals.

13

14    III.    **THE COURT SHOULOD STRIKE THE MATERIAL IN THE COMPLAINT**

15    **THAT IS EXCLUDED FROM ADMISSION AND DISCOVERY BY EVID.**
       **CODE § 1152.**

16    Section 436 of the Code of Civil Procedure provides, in pertinent part:

17            The court may, upon motion made pursuant to Section 435, or at
               any time in its discretion, and upon terms it deems proper:
18
               (a) Strike out any irrelevant, false, or improper matter inserted in
19             any pleading.

20             (b) Strike out all or any part of any pleading not drawn or filed in
               conformity with the laws of this state, a court rule, or an order of
21             the court.

22    "Irrelevant matter," as the term is used in Section 436, is defined by Section 431.10 of the Code

23    of Civil Procedure as, *inter alia,* "matter that is not essential to the statement of a claim or

24    defense, or not pertinent to or supported by a claim or defense." Code Civ. P. § 431.10(b) &

25    (c).

26    Materials that are inadmissible and outside of the scope of permissible discovery are,

27    manifestly, irrelevant and improper matter to insert into a pleading. Since a party cannot offer

28    such evidence at trial or conduct discovery thereon, it is rendered irrelevant to the action.

1    Settlement offers or negotiations are generally inadmissible to prove liability for the

2    loss or injury involved. Evid. Code § 1152. Such evidence is also not likely to lead to

3    discovery of admissible evidence because no logical inference of liability can be drawn

4    therefrom, given that defendants often settle even frivolous lawsuits in order to "buy peace."

5    Covell v. Superior Court, 159 Cal. App. 3d 39, 43 (1984); see also Isaacson v. California

6    Insurance Guarantee Ass'n, 44 Cal. 3d 775, 794 n. 14 (1988) ("a party may reasonably wish to

7    settle a claim even though he believes he is not liable"). Section 1152's purpose is to promote

8    the informal resolution of disputes without litigation (and consequently, promote judicial

9    economy) by encouraging candid discussion among parties. See, e.g., Caira v. Offner, 126 Cal.

10    App. 4th 12, 32-33 (2005).

11    Section 1152 is broadly construed to include not only settlement offers themselves, *but

12    any statement made in the course of settlement discussions*. Evid. Code § 1152(a) ("as well as

13    any conduct or statements in negotiation thereof"); C & K Engineering Contractors v. Amber

14    Steel Co., Inc., 23 Cal. 3d. 1, 13 (1978) (statement "occurred during compromise negotiations

15    in which both parties were discussing, and attempting to discover, the facts underlying their

16    dispute"). Accordingly, in Caira v. Offner, the appellate court found that a single isolated

17    e-mail, although it did not contain an offer of compromise, was inadmissible because it was

18    part of a larger series of e-mails exchanged while the parties were in the midst of discussing

19    their disputes and how to resolve them. Caira, 126 Cal. App. 4th at 30-36. The court reasoned

20    that as long as the e-mail was connected to such discussions, Section 1152 governed its

21    admissibility. Id. at 35-36.

22    Pursuant to these principles, the e-mail attached as Exhibit B to the Complaint, which

23    expressly includes offers of compromise as well as an affirmative statement that the e-mail was

24    made for the purpose of reaching a settlement, is indisputably inadmissible and beyond the

25    scope of permissible discovery. Also pursuant to these principles, the telephone conversation

26    expressing the "same message" as the e-mail is clearly part of, and connected to, the parties'

27    discussions of which the e-mail was also a part, and is thus inadmissible and beyond the scope

28    of permissible discovery.

1    Nonetheless, Plaintiff Blue Marlin has alleged in its Complaint that on the basis of

2    statements from these communications, it "considers defendant to have anticipatorily breached

3    the [License] Agreement." The submission of such statements as evidence of liability is

4    precisely what Evid. Code § 1152 prohibits. Therefore, the Court should strike the allegations

5    and exhibit relating to these statements from the Complaint.

6

7    **IV.    CONCLUSION.**

8    For the foregoing reasons, the Court should grant USPA's Motion to Strike in its entirety

9    and issue an order striking those certain portions and Exhibit B to the Complaint, as specifically

10    set forth in the Notice of this Motion.

11

12    Dated: August 23, 2006                    DAVID M. BASS & ASSOCIATES

13

14                                 By: _____

15                                     David M. Bass
                                     Attorneys for Defendant USPA
16                                     ACCESSORIES, LLC dba CONCEPT ONE
                                     ACCESSORIES

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT USPA ACCESSORIES, LLC'S NOTICE OF MOTION AND MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1

**PROOF OF SERVICE**
[C.C.P., §§1013(a) and 2015.5]

2

3  STATE OF CALIFORNIA        )    Case No. CGC-06-453170
                              )
4  COUNTY OF SAN FRANCISCO    )

5           I am employed in the county of Los Angeles, State of California. I am over the age of
6  18 and not a party to the within action; my business address is 2029 Century Park East,
   14th Floor, Los Angeles, California 90067.

7           On August 23, 2006, I served the foregoing document described as **DEFENDANT
8  USPA ACCESSORIES, LLC'S NOTICE OF MOTION AND MOTION TO STRIKE;
   MEMORANDUM OF POINTS AND AUTHORITIES**, on all interested parties in this action
9  by placing the original/true copies thereof enclosed in (a) sealed envelope(s) addressed as
   stated below:

10  Randall Riccardo, Esq.
    299 Kansas Street
11  San Francisco, CA 94103
    Facsimile: (415) 252-9633

12
    ☒    **BY MAIL**    I am "readily familiar" with the firm's practice of collection and
13         processing of correspondence for mailing. Under that practice it would be deposited
           with U.S. Postal Service on that same day with postage thereon fully prepaid at Los
14         Angeles, California in the ordinary course of business. I am aware that on motion of the
           party served, service is presumed invalid if postal cancellation date or postage meter
15         date is more than one day after date of deposit for mailing in affidavit.

16  ☐    **BY (PERSONAL SERVICE)**    I caused the envelope to be delivered by hand to
           the office of Counsel for Plaintiffs at the address listed above.

17
    ☐    **BY (EXPRESS MAIL)**    I deposited such envelope in the receptacle for **Overnite**
18         **Express** and requested that it be delivered to the above-named attorneys/parties by way
           of priority next day delivery (to be delivered by 10:00 a.m. the following morning).

19
           I declare under penalty of perjury under the laws of the State of California that the
20  foregoing is true and correct.

21         Executed on August 23, 2006, at Los Angeles, California.

22

23                                          _Lorelei Phillips_

24                                          Lorelei Phillips

25

26

27

28

PROOF OF SERVICE

**TAB 4**



1   Randall Riccardo (CA State Bar No. 224672)
    BLUE MARLIN CORP.
2   299 Kansas Street
    San Francisco, CA 94103
3   Telephone: (415) 215 2951
    Facsimile: (415) 215 2951
4

5

6   Attorneys for Plaintiff
    BLUE MARLIN CORP
7

8                    SUPERIOR COURT OF CALIFORNIA
                        COUNTY OF SAN FRANCISCO
9                        UNLIMITED JURISDICTION

10

11  BLUE MARLIN CORP.                   CASE NO. CGC-06-453170
                  Plaintiff,
12                                      PLAINTIFF BLUE MARLIN'S
                                        OPPOSITION TO MOTION TO STRIKE
13        v.

14  USPA ACCESSORIES, LLC dba CONCEPT   Date:     Septemeber 21, 2006
    ONE ACCESSORIES                     Time:     9:30 a.m.
15                Defendant.            Place:    Department 302

16

17  I.    INTRODUCTION

18        Defendant has filed a Motion To Strike Exhibit B to the Complaint, as well as sections of the

19  Complaint quoting Exhibit B, purportedly on the grounds that the exhibit, an email from Sam Hafif

20  to Erik Stuebe, was generated as part of settlement negotiations.   Defendant offers no factual

21  support for this assertion, nor can it. Defendant wishes to elevate Mr. Hafif's demand email

22  (hereinafter "Hafif email") to the level of settlement negotiations for the purpose of excluding

23  evidence that Mr. Hafif repudiated the License Agreement between the parties, thereby anticipatorily

24  breaching that contract.   The Hafif email does not constitute settlement discussions and does not

25  come within the ambit of inadmissible evidence pursuant to Cal. Evid. Code § 1152.

26        The Hafif email is proffered not for the purpose of showing the Defendant's liability under a

27  dispute, but rather to show Defendant's intention to repudiate the License Agreement.  In fact, there

28                                          1

1   has never been any dispute as to Defendant's liability and obligation under the License Agreement.

2   Additionally, there had been no instituted or threatened litigation filed by either party. Defendant

3   sent the Hafif email in an attempt to create a better business advantage for itself and concomitantly

4   offered the Plaintiff nothing. Blithely typing "this letter is for the purpose of trying to reach a

5   settlement only" at the bottom of a communication does not raise a self-initiated, self-serving

6   correspondence to the level of settlement negotiations, or anything approaching discussions

7   attempting to resolve a dispute. As such, the Hafif email is not inadmissible as a settlement offer

8   communication, does not come within the ambit of CA Evid. Code § 1152, and should not be struck

9   from the Complaint.

10

11  **II.    FACTS**

12          Defendant USPA's President, Sam Hafif, sent the Hafif email in an attempt to persuade Blue

13  Marlin to lower the minimum royalties under a License Agreement existing between the two parties

14  in which USPA produced and sold hats bearing Blue Marlin's trademarks. As USPA was having

15  difficulty achieving sales levels to match the guaranteed minimum royalties it owed Blue Marlin,

16  they sought to reduce the minimum royalty payments they were making. USPA's President, Sam

17  Hafif, and his counterpart for Blue Marlin, had a 3 or 4 communications, all initiated by USPA, in

18  which USPA attempted to convince Blue Marlin to lower USPA's payment obligations. Blue

19  Marlin ultimately said it would not lower USPA's payment obligation. On March 29, 2006, USPA

20  sent the Hafif email informing Blue Marlin that if it did not lower its payment obligation, it would

21  cease payment altogether. (See Declaration of Randall Riccardo)

22          At the time of the Hafif email, USPA was in arrears on its payments in the amount of $78,

23  139.23: this fact has never been disputed. Blue Marlin interpreted the Hafif email, in which

24  President Hafif stated, "we would not agree to pay the minimum royalties as stated in the contract"

25  and "we will not accept that obligation" as evidence of anticipatory breach. Blue Marlin then

26  instituted this suit seeking payment for the overdue royalties as well as the future payments owed it

27  under the License Agreement.

28

**III.   ARGUMENT**

Blue Marlin's Complaint alleges that USPA breached, and continues to breach, the License Agreement by its failure to pay the stated royalty payment and repudiating the Agreement by the language contained in the Hafif email. Blue Marlin is not using the Hafif email to show USPA's liability under the License Agreement; USPA's obligation under the Agreement has never been in dispute. Nor was there a dispute occurring at the time USPA sent the Hafif email. Litigation had not been filed, nor even threatened, by either party. Blue Marlin had no interest in the discussions USPA instituted that it is now claiming were "settlement discussions" covered by Cal. Evid. Code § 1152; it merely wanted to be paid what it was due under the License Agreement.

USPA unilaterally attempted to convince Blue Marlin to lower the minimum royalties it owed. Such self-serving communications, at a time when no dispute existed, cannot be considered "settlement discussions" pursuant to CA Evid. Code § 1152. They were merely an attempt by USPA to orchestrate a business advantage for itself, at Blue Marlin's expense, while offering nothing to Blue Marlin. There is no reason Blue Marlin should not have believed the unequivocal communication contained in the Hafif email, later and contemporaneously shown to be true, that USPA repudiated the License Agreement. To date, USPA has made no payments. To allow USPA to claim that a unilateral communication threatening to stop payment cannot be treated as a clear example of anticipatory repudiation would essentially nullify the doctrine of anticipatory repudiation as the large majority of such communications are couched along with language suggesting that the party repudiating the contract has a dispute with the other contractee.

When considering whether a statement is admissible as an admission by an opposing party, or constitutes an offer of compromise or settlement discussion, California courts have held that "the intention of the party is dispositive". *Moving Pictures Etc. v. Glasgow Theaters, Inc.*, 6 C.A. 3d 395; 86 Cal Rptr. 33 (1970). In this seminal case, the court opined that "if the party making the [settlement] proposal intended to make no concessions but to exact all the he deemed himself

3

1  entitled to, the proposal is an ordinary admission against interest and not an attempt to compromise".
2  *Id* at 401.  In the instant action, USPA was seeking to exact a better deal than the one it had signed.
3  Blue Marlin did not believe there was a dispute and indeed there never has been a disagreement as to
4  USPA's obligations under the License Agreement.  USPA merely wished to lower its payments.

5        Since there was never any dispute between the parties at to USPA's obligation under the
6  License Agreement, and no litigation was threatened or instituted, CA Evid. Code § 1152 does not
7  apply.  *In Price v. Wells Fargo Bank*, 213 Cal App. 3d 465, 261 Cal Rptr. 735 (1989), the defendant
8  sought to exclude letters it had sent to a bank acknowledging its obligation to pay its mortgage and
9  seeking a forbearance.  The defendant later sought to exclude these letters as offers of compromise
10 pursuant to §1152.  The Court stated that the letters the defendant had written were not covered by §
11 1152 because the letters "affirmatively disclose that no dispute existed.  Under these circumstances,
12 Evidence Code Section 1152 does not apply." *Id* at 481.  The purpose of § 1152 is to ban statements
13 that "tend to prove his or her liability" on an issue in dispute.  As in *Price*, the Hafif email sought to
14 be excluded by USPA is not being offered by Blue Marlin to demonstrate USPA's liability under the
15 License, but rather to show its intention to repudiate the contract.  There was never any dispute as to
16 USPA's liability and obligation under the License Agreement.

17
18
19 **IV.    CONCLUSION**
20        For the reasons stated above, plaintiff respectfully requests that this Court deny defendant's
21 motion to strike the allegations and Exhibit B in the Complaint set forth in the Defendant's Motion
22 to Strike.
23 Dated:  September 8, 2006                    BLUE MARLIN
24
25
26 By:  _____
27      Randall Riccardo
        Attorneys for Plaintiff
        BLUE MARLIN
28

4

PROOF OF SERVICE
1013 A(3) CCP REVISED 5/1/88

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO        )  Case No. CGC-06-453170

    I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 299 Kansas Street, San Francisco, California 94103

    On September 8, 2006, I served the foregoing document described as PLAINTIFF BLUE MARLIN CORP.'S OPPOSTION TO MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES on the interested party in this action as follows:

DAVID M. BASS
DAVID M. BASS & ASSOCIATES
2029 CENTRUY PARK EAST
14TH FLOOR
LOS ANGELES, CA 90067
FACSIMILE: 415 789 1149

    ☐    BY PERSONAL SERVICE: I caused the above-mentioned document(s) to be personally served to the offices of the addressee.

    ☐    BY FACSIMILE: I communicated the above-mentioned document(s) via facsimile to the addressee as indicated above. The transmission was reported complete and without error by a transmission report issued by the facsimile transmission machine as defined in California Rule of Court 2003 upon which the said transmission was made immediately following the transmission. A true and correct copy of the transmittal report bearing the date, time and sending facsimile machine telephone number shall be attached to the original proof of service.

    ☐    BY ELECTRONIC MAIL (E-MAIL): I caused the above-mentioned document(s) to be served via electronic mail from my electronic notification address to the electronic notification address of the addressee as indicated above. The document was served electronically and the transmission was reported complete without error.

    ☒    BY FEDERAL EXPRESS: I caused the above-mentioned document(s) to be sent via Federal Express overnight delivery. By placing a true and correct copy of such

I

PROOF OF SERVICE
Case Name
Case No.

1   document(s) enclosed in a sealed envelope or package designated by the express service carrier and

2   deposited in a facility regularly maintained by the express service carrier or delivered to a courier or

3   driver authorized to receive documents on its behalf, with delivery fees paid or provided for,

4   addressed to the address last shown by that person on any document filed in the action as indicated

5   above

6       ☐    BY MAIL: By placing a true and correct copy of such document(s) enclosed

7   in a sealed envelope addressed to the offices indicated above. I am "readily familiar" with the firm's

8   practice of collection and processing correspondence for mailing. Under that practice it would be

9   deposited with U.S. postal service on that same day with postage thereon fully prepaid at San

10  Francisco, California in the ordinary course of business. I am aware that on motion of the party

11  served, service is presumed invalid if postal cancellation date or postage meter date is more than one

12  day after date of deposit for mailing in affidavit.

13      Executed on September 8, 2006, at San Francisco, California.

14      I declare under penalty of perjury under the laws of the Sate of California that the

15  above is true and correct.

16

17                          T.K. RAVENE

18

19

20

21

22

23

24

25

26

27

28



PROOF OF SERVICE
Case Name
Case No.

**TAB 5**

1  David M. Bass (State Bar No. 117199)
   Peter M. Cho (State Bar No. 213870)
2  DAVID M. BASS & ASSOCIATES
   2029 Century Park East, 14th Floor
3  Los Angeles, California 90067
   Telephone: (310) 789-1152
4  Facsimile: (310) 789-1149
   E-mail: dbass@basslawla.com
5
6  Attorneys for Defendant USPA ACCESSORIES,
   LLC dba CONCEPT ONE ACCESSORIES
7

**ENDORSED**
**FILED**
San Francisco County Superior Court

SEP 1 4 2006

GORDON PARK-LI, Clerk
BY: _____ MARY ANN MORAN
                        Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SAN FRANCISCO

10

11 BLUE MARLIN CORP.,                    Case No. CGC-06-453170

12              Plaintiff,                Hon. Ronald E. Quidachay
                                          Law & Motion Department 302
13      vs.

14 USPA ACCESSORIES, LLC dba             **REPLY MEMORANDUM IN SUPPORT OF**
   CONCEPT ONE ACCESSORIES,              **DEFENDANT USPA ACCESSORIES,**
15                                        **LLC'S MOTION TO STRIKE**
                Defendant.
16                                        Date:      September 21, 2006
                                          Time:      9:30 a.m.
17                                        Place:     Department 302

18
                                          Complaint Filed:    June 15, 2006
19

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

I.    **EXHIBIT B TO PLAINTIFF'S COMPLAINT EXPRESSLY CONSTITUTES A**
      **SETTLEMENT COMMUNICATION MADE IN AN ATTEMPT TO RESOLVE**
      **A DISPUTE.**

Plaintiff Blue Marlin Corporation ("Blue Marlin") claims that Exhibit B to the Complaint is not a settlement communication by characterizing it as an attempt to renegotiate the payment terms of the parties' license agreement ("License Agreement"). (Opposition at 3:7-14, 4:2-4.)[1]  Plaintiff's *argument completely disregards the express language of Exhibit B to the Complaint.*  Exhibit B's contents (an e-mail from USPA to Blue Marlin) definitely establishes that it is a pre-lawsuit settlement communication between the parties concerning disputes that had arisen over the terms and performance of the parties under the License Agreement.

First, the contents of the e-mail manifestly reveal that a dispute existed between the parties. In this e-mail, Sam Hafif, an executive of USPA, explicitly sets forth specific acts and omissions of Blue Marlin constituting *breach of the Agreement by Blue Marlin,* as well as misrepresentations made by Blue Marlin to induce USPA to enter into the License Agreement:

> 1)    Breach of exclusivity -- For several months after the license agreement went into effect Blue Marlin continued to distribute headwear [the licensed product] from their inventory into the market.
>
> 2)    Misrepresentation -- A[t] our initial meetings with you and Per, you stated that at peak your headwear business had achieved $3,000,000 in revenue, and for the year prior to our entering into license with you, it was $700,000. We based our proposals and sales projections on that advice. Subsequent to signing the license we learned that information to be false. Further, account lists that were provided to us as a basis for distribution turned out to be outdated as 75% of the specialty stores on those lists were inactive for a period of time and advised us that they had dropped Blue Marlin and had no interest in buying the brand.
>
> 3)    Changes to the marks -- Prior to our entering into the agreement, Blue Marlin had been using several marks

---

[1] Blue Marlin's Opposition also makes several prejudicial, incorrect and/or unsupported averments and arguments that raise matters outside of the Complaint, *e.g.,* USPA was having difficulty achieving sales levels, communications between the parties other than Exhibit B to the Complaint, etc. However, a motion to strike is confined to the pleading under attack, or matters which the court may judicially notice. Code Civil Procedure § 437. Thus, these averments and arguments should be disregarded, and this Reply does not address them.

2

1  including the Blue Dot mark for many years, shortly after
   signing the license we were advised that you were not
2  going forward with those marks, and we were prohibited
   from using them on product, packaging and displays.
3  You never adopted a permanent mark thereafter, changing
   your mark every 3-4 months . . . . This diminished the
4  value of the Blue Marlin brand, and did not enable us to
   develop the business using the mark that was presented to
5  us prior to signing.

6      On the basis of this wrongful conduct by Blue Marlin and the resulting negative impact

7  on USPA's ability to receive any benefits under the License Agreement, Mr. Hafif stated that

8  USPA was not obliged to adhere to the minimum royalty payment obligations of the License

9  Agreement.[2] (Complaint, Exh. B.) A dispute had arisen over the terms and performance of the

10  parties under the License Agreement. Blue Marlin's contention that there was no dispute

11  between the parties at the time of the e-mail (Opposition at 3:7-11) directly contradicts the plain

12  language of the e-mail (Exhibit B).

13      Second, the contents of Exhibit B also unequivocally demonstrate that USPA was

14  attempting to resolve this dispute in order to avoid this action. Mr. Hafif offered two

15  "alternatives" as a *settlement of the disputes discussed by the parties at the time of Mr. Hafif's*

16  *email.* Mr. Hafif proposes as a settlement with Blue Marlin (a) that the parties eliminate the

17  minimum royalty requirements in favor of royalties based upon actual sales, or (2) that the

18  parties simply terminate the License Agreement and honor royalty obligations up to that date.

19  (Complaint, Exh. B.) The e-mail concludes with the statement that *the email communication*

20  *and the proposals contained therein are for settlement purposes.* (*Id.*) USPA's intent to reach

21  a compromise of its dispute with Blue Marlin is unequivocal and precise.

22      The two cases cited by Blue Marlin in its Opposition, Moving Pictures Etc. v. Glasgow

23  Theaters, Inc., 6 Cal. App. 3d 395 (1970) and Price v. Wells Fargo Bank, 213 Cal. App. 3d 465,

24  481 n. 3 (1989), are inapposite to the circumstances here given the contents of Exhibit B. Blue

25  Marlin's cases stand only for the proposition that Evidence Code § 1152 does not apply to

26  statements that are not connected with attempts to compromise or are statements of fact

---

[2] After the Court rules upon this Motion to Strike, USPA will file an answer and cross-
28  complaint setting forth its affirmative defenses and claims for affirmative relief based on Blue
   Marlin's wrongful conduct.

1   independent of a compromise. The rule in these cases expressly does not apply to the

2   statements set forth in Exhibit B to the Complaint.

3        In Moving Pictures, the court admitted into evidence at trial a letter by counsel because

4   it constituted an admission of liability and not an offer of compromise. Moving Pictures, 6

5   Cal. App. 3d at 404-405. The letter explicitly stated that the defendant owed a sum certain, and

6   offered to pay it in full satisfaction of the matter. Id. at 404. Defendant's letter did not evince

7   its dispute to the obligation; rather, the court found that it was a pure admission of liability and

8   an effort to secure relief against it, not an attempt to negotiate a settlement and make

9   concessions. Id. at 405.

10       Similarly, in Price, the court found that letters by counsel also constituted admissions of

11  liability that showed that no dispute existed over the defendants' obligations. Price, 213 Cal.

12  App. 3d at 481 n. 3. In the letters, defendants' counsel never disputed the obligations, but only

13  sought more time to meet them. Id. at 481.

14       In contrast to the Moving Pictures and Price authorities, USPA's email contends that

15  USPA is *not* obliged to perform under the License Agreement based on Blue Marlin's wrongful

16  conduct, which conduct USPA describes. USPA further states that "[if] need be we are

17  prepared to defend [this] position legally." (Complaint, Exh. B.) USPA also offers settlement

18  alternatives in which it offers to pay royalties that are based on the representations and

19  promises made by Blue Marlin to induce USPA to enter into the License Agreement, even

20  though USPA was not obligated to do so. To the extent that there is any supposed doubt that

21  USPA was making any type of admission, USPA extinguishes it at the end of the e-mail: "[t]he

22  intent of this letter is for the purpose of trying to reach a settlement only, and we're reserving

23  all of our rights, and *making no admissions*." (Complaint, Exh. B; emphasis added.) The

24  statements of USPA's e-mail make it abundantly certain that USPA's intent was to reach a

25  compromise of the parties' dispute concerning the terms and performance of the parties under

26  the License Agreement.

27  ///

28  ///

4

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT USPA ACCESSORIES, LLC'S MOTION TO

1   II.    **BLUE MARLIN CONCEDES IN ITS OPPOSITION THAT IT HAS RELIED**

2          **UPON EXHIBIT B TO THE COMPLAINT TO ESTABLISH LIABILITY.**

3          Blue Marlin also argues that even if Exhibit B were a settlement communication, it only

4   proves USPA's intention to repudiate the License Agreement, and not USPA's liability for

5   breach of contract. (Opposition at 3:6-8; 4:13-16.) This argument is nonsensical.

6          Under California law, the doctrine of anticipatory breach allows a party to treat a

7   repudiation of the contract as an actual breach of the contract. Daum Development Corp. v.

8   Yuba Plaza, Inc., 11 Cal. App. 3d 65, 73-74 (1970). Thus, by attaching and relying upon

9   Exhibit B as evidence of a purported repudiation, Blue Marlin is necessarily attempting to

10  prove *liability for breach* of the License Agreement by a settlement communication.

11         Exhibit B shows that USPA had its separate disputes with Blue Marlin and sought to

12  resolve those disputes without litigation. Using this settlement communication (Exhibit B) as

13  an admission of liability violates well settled California law on the admissibility of settlement

14  communications.

15

16  III.   **CONCLUSION.**

17         For the foregoing reasons, the Court should grant USPA's Motion to Strike the

18  Complaint in its entirety, and issue an order striking Exhibit B and those portions of the

19  Complaint referring to Exhibit B in the Complaint, as specifically set forth in USPA's Notice of

20  Motion to Strike.

21

22  Dated: September 1, 2006              DAVID M. BASS & ASSOCIATES

23

24                                       By: _____

                                             David M. Bass
25                                       Attorneys for Defendant USPA ACCESSORIES,
                                         LLC dba CONCEPT ONE ACCESSORIES

26

27

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT USPA ACCESSORIES, LLC'S MOTION TO

1

## PROOF OF SERVICE
*[C.C.P., §§1013(a) and 2015.5]*

2

3  **STATE OF CALIFORNIA**              )  Case No. CGC-06-453170
                                        )
4  **COUNTY OF SAN FRANCISCO**          )

5       I am employed in the county of Los Angeles, State of California. I am over the age of
6  18 and not a party to the within action; my business address is 2029 Century Park East,
   14th Floor, Los Angeles, California 90067.

7       On September 13, 2006, I served the foregoing document described as **REPLY
   MEMORANDUM IN SUPPORT OF DEFENDANT USPA ACCESSORIES, LLC'S**
8  **MOTION TO STRIKE**, on all interested parties in this action by placing the original/true
   copies thereof enclosed in (a) sealed envelope(s) addressed as stated below:

9

   Randall Riccardo, Esq.
10  299 Kansas Street
    San Francisco, CA 94103
11  Facsimile: (415) 252-9633

12  ☐    **BY MAIL**    I am "readily familiar" with the firm's practice of collection and
         processing of correspondence for mailing. Under that practice it would be deposited
13       with U.S. Postal Service on that same day with postage thereon fully prepaid at Los
         Angeles, California in the ordinary course of business. I am aware that on motion of the
14       party served, service is presumed invalid if postal cancellation date or postage meter
         date is more than one day after date of deposit for mailing in affidavit.

15
16  ☐    **BY (PERSONAL SERVICE)**      I caused the envelope to be delivered by hand to
         the office of Counsel for Plaintiffs at the address listed above.

17  ☒    **BY (EXPRESS MAIL)**     I deposited such envelope in the receptacle for **Overnite
         Express** and requested that it be delivered to the above-named attorneys/parties by way
18       of priority next day delivery (to be delivered by 10:00 a.m. the following morning).

19       I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.

20
    Executed on September 13, 2006, at Los Angeles, California.
21

22

23                                      _____
                                              Lorelei Phillips
24

25

26

27

28